## TONINI et al. v. SCHOOL DIST. NO 17, SEMINOLE COUNTY.

No. 20786. Opinion Filed Feb. 16, 1932.

A. S. Wells, for plaintiffs in error.

V. R. Biggers and A. A. Criswell, for defendant in error.

KORNEGAY, J. As shown by the case-made, the plaintiffs in error sued upon a contract for the amount called for therein, set out in their petition, at page 7 of the case-made, as follows:

"This agreement: Made this 9th day of June, 1928, by and between Tonini & Bramblet, architects, Oklahoma City, Okla., party of the first part, hereinafter designated the architects, and the board of education, district No. 17 of Seminole county, Okla., holding session in the city of Seminole, Okla., party of the second part, hereinafter designated the owner.

"Witnesseth: That the architects, in consideration of the fulfillment of the agreements herein made by the owner, that they will design a school building, and give same full and careful architectural supervision.

"The architects, acting as agents of said owner, shall and will prepare drawings and specifications for said building. The architects further agree that the design shall be of such a character that the owner will be able themselves to let the contract within the amount set aside for that purpose. They further agree to appear on the work often enough to assure themselves and the owner that the work is carried out in strict accordance with the plans and specifications.

"It is further agreed mutually between the parties hereto that the sum to be paid the architects by the owner shall be equivalent to five per cent. of the cost of the building and equipment. Three and one-half per cent. for the plans and one and one-half per cent. for the supervision.

"Upon signing the contract with the contractors to erect the building, three and one-half per cent. shall be due and payable, and the remaining one and one-half per cent. as the building progresses.

"It is mutually agreed that the drawings and specifications are instruments of service, and remain the property of the architects.

"It is further agreed that should this contract be executed before the financial arrangements have been made for the building proposed, the architects shall furnish the board advance information as to cost and design. Should the board be unable to finance such improvements within a period of one year from this date, this contract is automatically canceled without any cost to the board, otherwise to remain in full force and effect.

"In witness whereof: The parties hereunto set their hands and seals the day and year first above written.
"Tonini & Bramblet, Architects.
"By O. H. Tonini.

"G. F. Killingsworth, President
"Attest: Jas. O. Seger, Clerk.
"(Seal)"

The contract was actually entered into on Sunday, the 10th of June, 1928, and dated back. On the 28th of June, 1928, a statement of account was made as follows:

"Board of Education.
"Oklahoma City, Okla. June 28th, 1928.
"School Dist. No. 17 Seminole County, Okla.
"In Account With
"Name Tonini & Bramblet    Architects.
P. O. Address, Okla. City.

"For Architects service as per contract and instructions. $76,400.00 @ 3½% $2,574.00

"The school clerk is hereby authorized to mail the warrant issued in payment of this claim to claimant at address herein above stated.

"I, the undersigned, upon oath, do depose and say that I have full knowledge of the above and foregoing account; that the said account is just, correct, due and according to law; and that the amount claimed, after allowing all just credits, is now due and wholly unpaid; and that I am duly authorized to make this affidavit so help me God.
"Tonini & Bramblet.
"O. H. Tonini, Claimant.

"Subscribed and sworn to before me this 29th day of June, 1928.
"Moss Bloom, Notary Public.
"My commission expires March 17th. 1930."

A general denial was filed followed later by amended answer, which was a general denial and a specific denial of the entering

into the contract, and a denial of any obligation under said contract. This denial was verified by G. F. Killingsworth, whose name apparently is signed to the contract as president.

The case came on for trial before an assigned judge. Correction was made so as to demand $100 more. One of the plaintiffs, O. H. Tonini, detailed the procedure leading up to his getting the paper declared upon. It developed that Mr. McBride had referred Mr. Seger to Mr. Tonini, an Oklahoma City architect, when on Mr. McBride's audit they discovered they had some money they could spend on a school building if they would get it in the way of expenditure by the 1st of July. The contract was admitted in evidence over objections as not being the contract of the board and as being illegal. Along with it were some plans and specifications for a school building.

The details of the meeting, and going to the school grounds and getting a tape line, can be found in the record, and it developed that Mr. Seger was acting in a clerical capacity, but was not the clerk of the board.

After preparing specifications, Mr. Tonini returned to Seminole and exhibited them to some members of the board, but they appear not to have been satisfactory with reference to the gymnasium, and he went back and came again, and his specifications and plans were not accepted, but a rival's plans were accepted.

Considerable cross-examination was had with reference to the details and the hurry for specifications and plans to be made. Mr. Seger was introduced, and told of discovering some excess money they did not know they had, and they wanted to get a supplemental estimate through so as to dispose of it, and Mr. Tonini was recommended to him by the city manager, and he called him and Tonini came down on Sunday, though no one knew of it except himself and perhaps Mr. Killingsworth. The upshot of it was that, on that Sunday, contract was signed by Mr. Killingsworth as president and Mr. Seger put the seal of the school board on it. It is very evident, though, that nobody knew the details of the contract except Mr. Seger, Mr. Tonini, and Mr. Killingsworth.

It appears that a local architect, by the name of Paul Meeting, was mentioned as wanting a chance at the work. When Mr. Tonini came down with his plans for the gymnasium, the athletic director and the superintendent of schools appear to have been consulted, and the idea at that time was to hurry it along so that a contract could be let before the 30th of June. It appears that the Attorney General, expressing a view that he could not give an official opinion, had advised Mr. Seger to let the contract before the expiration of the fiscal year.

It further appears that F. A. Butler & Company, of Oklahoma City, constructed the building for $72,500, leaving off the gymnasium and putting in 22 class rooms. At page 74 of the record, there appears as exhibit 4 a form of proposal for the erection of a grade school building, with the bids to be received June 28, 1928, at 1 o'clock, which was blank for the signature of contractors, that appears to have been offered to the board by Mr. Tonini. There were also a lot of specifications for the contractor to follow, the exhibits by the plaintiffs covering about 50 pages of the record.

It appears, at page 115, that Mr. Seger, the "sixth member" of the board, the clerk, attested the contract without reading it, relying upon Mr. Tonini's statement as to what it contained, and the regular architectural pay of 5 per cent. On cross-examination he stated that the matter had come up on this Sunday at the school ground, and this was the only time that any member of the board had been consulted about it. The minutes of June 19, 1928, at a regular meeting, were introduced, showing that the proposed contract was rejected, and on the 24th of June, the Butler contract was accepted.

There does not appear to be any request in the record for special declarations of law or special findings of fact, the parties largely relying upon legal conclusions, to arise from the records, in the office of the clerk of the board of education. It appears that Mr. Tonini, sometime about the 17th, brought before some of the members of the board his specifications, and he went back to change them, and that on the 19th, they were rejected. The 19th appears to be the only time that there was a regular meeting of the board where they were all present or notified. There was considerable testimony as to why the contract was signed without the sanction of the board, and an effort was made to establish that the board had ratified, by conduct, the contract as proposed, and actually signed by the president of the school board.

Other members of the board were exam-

ined besides those who were present on Sunday, concerning the method pursued by the plaintiff in getting the signature of the president. Some of the members of the school board evidently knew nothing or very little about what was going on. The audit of the amount of money that had been discovered by Mr. McBride was introduced in evidence.

The court found the issues generally for the defendant, and at page 241 of the case-made, the court, after asking if they had any more authorities to present, being assured that the point had been covered, pronounced judgment that the plaintiff take nothing by reason of the action.

A motion for new trial was filed on the ground of the judgment not being sustained by sufficient evidence, and later an amendment was made to it on account of newly discovered evidence, to the effect that one of the school board had gotten $1,000 out of it for opposing the plans of the plaintiff and favoring the plans of their rival, and for the further reason that they had discovered that in the Seminole newspaper advertisement had been made for bids on the construction of the building in accordance with the plans and specifications on file with the clerk of the board of education, and also in the office of the architects, Tonini & Bramblet, 416½ West Main street, Oklahoma City. A copy of that advertisement appears at page 253 of the record, and it is very evident that if there was an original notice lodged with the publisher, it was filed on the 14th of June, and it provided as follows:

"Plans and specifications will be on file with the clerk of the board of education on June 18, 1928, and at the office of the architects, Tonini & Bramblet, 416½ West Main street, Oklahoma City, Okla."

We are asked to reverse the action of the lower court in this case and on this record, and a brief has been filed and also an answer brief, and we have reviewed all the authorities that have been cited. We do not find anything in the authorities cited that is convincing that the court did wrong. It is very clear that there never was a contract made. Boards act as boards, not as individuals, and especially on the Sabbath Day. As to whether or not one member of the board got the $1,000 for opposing the contract of this plaintiff, we do not undertake to decide, as we do not think the plaintiff had any right of recovery under the evidence in this case.

So far as the publication of the notice is concerned, with the profusion of contracts and specifications that the plaintiff seemed to have ready at hand, in view of the evidence being silent as to how the notice got into the paper, we are unable to decide where the notice came from, but it is very evident from the notice on it that it is premature and based on hope and anticipation, rather than completed arrangements.

The plaintiffs below insisted on the strict letter of their bond, and when they discovered that they had left off $100 that 3½ per cent. of the supposed building price would represent, which they claimed would be due under the contract, they added it to the amount demanded. The lower court found that they were not entitled to anything, and we think the evidence showed it under the petition.

The case is accordingly affirmed.

LESTER, C. J., CLARK, V. C. J., and SWINDALL, ANDREWS, and McNEILL, JJ., concur. RILEY, HEFNER, and CULLISON, JJ., absent.